IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| TRADEMARKS HOLDING, LLC, GRAND HERITAGE HOTEL GROUP LLC, and GRAND HERITAGE MANAGEMENT LLC, | : : : : | |
| Plaintiffs, | : | |
| v. | : : | Civil Action No. 07cv167 BB/WDS |
| AMERICAN PROPERTY MANAGEMENT CORPORATION, and HERITAGE HOTELS & RESORTS, | : : : | |
| Defendants. | : | |

**GRAND HERITAGE'S RESPONSE TO
HERITAGE'S MOTION TO COMPEL**

*Introduction*

On July 2, 2007, Grand Heritage moved to compel Heritage to produce a number of documents that were, without any doubt, relevant to the claims in this trademark infringement litigation, in Heritage's possession and not covered by attorney-client or any other applicable privilege. In response, Heritage refused to produce any of them and, as justification, came up with the remarkable theory that it was somehow not required to produce the requested documents until Grand Heritage had proven the merits of its underlying claims. In reply, Grand Heritage added a request for sanctions to its motion – amply justified by Heritage's obdurate refusal to produce the requested documents and the fatuity of Heritage's reasoning. On August 31, 2007, this Court granted Grand Heritage's motion to compel, reserved for later consideration Grand Heritage's request for sanctions, and warned that failure to comply with the Court's order could result in sanctions against Heritage.

Apparently stung by the experience of being on the receiving end of a motion to

compel, Heritage has now decided to file its own – even going so far as to copy some of the language and charts that Grand Heritage used with some success in its earlier motion. The difference, of course, is that Grand Heritage has NOT refused to produce the requested documents. Of course, some of the requests are very broadly written and require Grand Heritage to search through a large number of employees' records, some of which are spread out across the United States in more than a dozen different hotels. Some of the requests could be construed to cover documents that are protected by attorney-client privilege or work-product doctrine. Some of the requests seek documents that simply do not exist. And some of the requests seek documents that will need to be designated as confidential or highly confidential under the parties' Protective Order. Grand Heritage stated these qualifications and other objections to form in its written responses. But other than that, Grand Heritage has indicated that it will provide exactly what Heritage has requested.

And so why the motion to compel? Grand Heritage has no idea, other than the disturbing possibility that this motion is nothing more than "payback" for Grand Heritage's filing and winning an earlier motion to compel against Heritage. Indeed, before Heritage had even filed the current motion, Grand Heritage's counsel had asked Heritage's counsel several times for a meet-and-confer conference regarding the parties' various discovery disputes – a prerequisite for any motion to compel under Rule 37(a)(2)(A). Heritage, however, filed its motion to compel without even attempting to comply with this requirement.

With this background in mind, Grand Heritage responds as follows to the specific allegations of the motion to compel.

### *The Specific Requests at Issue*

In paragraph 2 of its motion to compel, Heritage lists 49 of its 61 document requests as the subject of this motion to compel. The list includes all of the document requests numbered from 1 to 54 except for numbers 13, 26, 27, 39 and 42. And it appears that Heritage's argument with regard to most of the document requests is that Grand Heritage has responded that it will produce responsive, non-privileged documents in its possession, to the extent that any such documents exist.

In fact, there is nothing wrong at all with this response. As set forth in Rule 34(b) of the Federal Rules of Civil Procedure, a party's response to a document request "*shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, ... stating the reasons for the objection. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.*"

And Grand Heritage has followed the requirements of Rule 34(b) to the letter in its response to Heritage's document requests. Reproducing all 49 document requests in this response would seem to be a waste of the Court's time and resources, particularly since Heritage itself did not discuss each one individually in its motion papers. But to pick just one example of many for purposes of illustration, consider Heritage's document request number 22:

> Heritage's Request No. 22: All documents relating to any organizational charts sufficient to show the organizational structure, ownership, financing and interrelationships between Grand Heritage and its related entites.
>
> *Grand Heritage's Response: Grand Heritage objects to this request as overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Grand*

3

> *Heritage objects to this request to the extent it calls for the production of any documents or information not directly relevant to the above-captioned case. Moreover, Grand Heritage Hotels objects to the term "related entities" as vague and ambiguous. Grand Heritage Hotels objects to this request to the extent it seeks information that is not in its possession, custody or control.*
>
> ***Subject to and without waiver of any of the foregoing general and specific objections, Grand Heritage Hotels states that, to the extent such documents can be located and gathered after a reasonable search, it will produce relevant, non-privileged documents in Grand Heritage Hotels' possession or control in accordance with the Federal Rules of Civil Procedure, if any such documents exist.*** [Emphasis added.]

To begin with, the request not a model of clarity. The term "organizational charts" is self-explanatory, but how such charts might show the "ownership, financing and interrelationships" between Grand Heritage and its "related entities" is not immediately clear. In addition, the term "Grand Heritage" as used in this document request apparently refers to all three of the plaintiffs – Grand Heritage Management LLC, Grand Heritage Hotel Group LLC and Trademarks Holding LLC. Presumably, the "related entities" are all of the subsidiaries or affiliates of any one of the three plaintiffs, although that is not clear in the request itself.

In response, Grand Heritage made some basic objections to the form of the request – namely, the request's undue breadth, the burden of responding to such a broad request and the fact that some of the documents requested might fall well outside the scope of relevant discovery in this litigation. And then Grand Heritage added, without prejudice to or waiver of these objections, Grand Heritage <u>will produce responsive, non-privileged documents in its possession to the extent that they exist and can be located</u>.

A review of the other 48 document requests raised in Heritage's motion to compel shows that Grand Heritage gave similar, if not identical responses. In other words,

4

despite the many ambiguities in the requests themselves and other legitimate objections to the scope and burden of responding to them, Grand Heritage has indicated in each of its responses that it <u>will produce responsive, non-privileged documents in its possession to the extent that they exist and can be located</u>.

And what exactly does Heritage contend is deficient about any of these responses? Heritage's motion simply does not say.

### *Production of Documents and Meet-and-Confer Conference*

The only other complaint discernable from reading Heritage's motion to compel is that Grand Heritage has not yet gathered and produced all of the documents responsive to Heritage's request. And yet, on closer inspection, there is much less to this issue than Heritage has presented in its papers.

From the time that Grand Heritage received Heritage's document requests, it was clear that gathering responsive documents would mean searching employee files and records that might be kept at Grand Heritage's headquarters OR at more than a dozen different hotels scattered across the United States. Gathering responsive documents would involve dozens of employees and scores of man-hours. And that does not include the time spent in deciphering and interpreting some of the more obscure phrasing and terminology that Heritage included in its requests.

Grand Heritage served its written responses to Heritage's document requests on time on September 19, 2007 (attached hereto as Exhibit A). At that time, Grand Heritage informed Heritage that it was still in the process of gathering responsive documents and that this process might take a few more weeks, given the number and scope of what

5

Heritage had requested. Again, Grand Heritage did not refuse (and has never refused) to produce the requested documents. The only question was the amount of time needed to gather them from Grand Heritage's widely dispersed locations.

About a week afterwards, on September 28, it became clear to Grand Heritage that – despite this Court's previous order – Heritage was still refusing to comply with certain discovery requests. Counsel for Grand Heritage outlined these deficiencies in a letter to counsel for Heritage and invited counsel to discuss these problems in a telephone conference on October 1 (attached hereto as Exhibit B). There were also clerical errors in two of Grand Heritage's responses to document requests, and so on the same day, Grand Heritage also served an amended response to these two requests (attached hereto as Exhibit C).

On October 1, there was some confusion as to whether Grand Heritage's meet-and-confer conference was to be held at 1:00 p.m. Eastern time or Mountain time. Before Grand Heritage could reschedule it, however, Heritage filed the motion to compel.

Upon receiving Heritage's motion to compel, Grand Heritage's counsel asked by email whether Heritage would be going forward with the motion without participating in a required meet-and-confer conference (attached hereto as Exhibit D). Of course, if Heritage had chosen to comply with the requirements of Rule 37(b), the parties might have discussed on the telephone a date for production of documents that allowed Grand Heritage sufficient time to conduct a reasonable search of all of its employees' files. Heritage, however, would not participate.

At this point, it appears that the document collection process will take a few additional weeks to complete and certainly by November 16. Of course, Grand Heritage

has been producing documents to Heritage as they become available – approximately 1,500 pages produced by September 28, 2007, and will produce at least another 1,600 pages by October 19, 2007.

Of course, Heritage may attempt to argue that the meet-and-confer requirement is but a mere formality and should not prevent the Court from considering this motion on the merits.  But that view ignores the very reason that Rule 37 was amended to add this requirement – and why district courts nationwide had imposed a similar meet-and-confer requirement through local rules prior to the amendment of Rule 37.

Indeed, this motion could be the "poster child" for why such conferences are required.  Underneath all of the bluster of Heritage's motion, it is clear that there is no real discovery dispute to be decided here.  Grand Heritage has responded that, despite its various objections, it will produce the requested documents to the extent that they exist, can be located and are not otherwise protected from disclosure by attorney-client privilege or work-product doctrine.  Grand Heritage has been working diligently to gather all of the requested documents, despite their broad scope and sometimes questionable relevance to the claims at issue.  At one point, perhaps the only real issue dividing the parties was the date by which Grand Heritage could reasonably complete its search for responsive documents, but even that would have been worked out if Heritage had chosen to participate in a reasonable discussion about this motion, as required under Rule 37(b).  As it stands, Heritage chose gamesmanship instead, and the result is the pending motion.  With all due respect, rewarding Heritage for its continued disregard of the Court's rules and procedures would be contrary to the law and unfair to those who have followed the rule's requirements.

*Conclusion*

For the reasons set forth above, Grand Heritage respectfully requests that the motion to compel be denied.

                BUTT THORNTON & BAEHR PC

                By: /s/ Emily A. Franke
                      Rodney L. Schlagel
                      Emily A. Franke
                      Butt, Thornton & Baehr P.C.
                      P.O. Box 3170
                      Albuquerque, NM 87190
                      (505) 884-0777
                      rlschlagel@btblaw.com

                      Of counsel:
                      Janet F. Satterthwaite
                      Jeffrey L. Eichen
                      Seth Shaifer
                      Venable, LLP
                      575 7th St NW
                      Washington DC 20004
                      202-344-4000
                      fax 202-344-4974
                      jfsatterthwaite@venable.com
                      trademarkdocket@venable.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 16th day of October, 2007, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Roger E. Michener
Justin Jackson
Deborah Peacock
michener@redthistle.com
michener@peacocklaw.com
jjackson@peacocklaw.com
docketing@peacocklaw.com


/s/ Emily A. Franke for
Rodney L. Schlagel